**EXHIBIT B**

Filing # 73989484 E-Filed 06/22/2018 03:19:55 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

JANE DOE,                                    CASE NO:

      Plaintiff,

vs.

UNIVERSITY OF MIAMI, a Florida
not for Profit Corporation,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff JANE DOE by and through her undersigned counsel, sues Defendant
UNIVERSITY OF MIAMI and alleges:

1.      This is an action for damages far in excess of $15,000, exclusive of attorney's
fees, interest, and costs.

2.      At all times material hereto, Plaintiff JANE DOE was a minor and was resident of
the Pennsylvania, a student at the University of Miami and is otherwise *sui juris.*

3.      At all times material hereto, Defendant UNIVERSITY OF MIAMI is a Florida
not profit corporation duly authorized to do and doing business in Miami-Dade County, Florida.

4.      Venue is proper in Miami-Dade County, Florida because the incident giving rise
that this incident occurred in Miami-Dade County, Florida on the campus of the UNIVERSITY
OF MIAMI, and the Defendant is duly authorized to do and doing business in Miami-Dade
County, Florida.

CASE NO:

## **FACTS GIVING RISE TO THIS CLAIM**

5.      The minor Plaintiff arrived at the UNIVERSITY OF MIAMI as a student athlete in the sport of soccer and was placed in the Pearson Dorm at the UNIVERSITY OF MIAMI with other student athletes.

6.      The minor Plaintiff had come from a small town in Pennsylvania to Miami and the UNIVERSITY OF MIAMI.  When her parents said goodbye to her and left her at the UNIVERSITY OF MIAMI, they assumed that UNIVERSITY OF MIAMI of would do everything it could to protect their daughter at a school well known for its athlete programs for both men and women.

7.      However, in reality, the minor, JANE DOE was given little or no instructions or warnings as to security on the campus of the UNIVERSITY OF MIAMI.  Further, she was under no real counseling or supervision as she began her college career.

8.      It would not be until six weeks after she arrived that coaches would contact her and be able to watch over her and give her instructions as to the life of a student athlete and what was expected of her and what was expected of the university.   JANE DOE was essentially on her own for the first six week which was all known, at all times, to all coaches, employees, administration, and other agents of the UNIVERSITY OF MIAMI.

9.      The minor JANE DOE, was, an athlete in high school in Pennsylvanian and she was used to going out with friends and other athletes and being watched and protected by the male student athletes should anything were to occur with regard to nonstudents or any one and that is how she grow up in her hometown in Pennsylvanian.  However, she found out the UNIVERSITY OF MIAMI and the student athlete situation would be very very different from what she was used to.

2

CASE NO:

10.     On or about July 5, 2014, the minor JANE DOE went out with some new friends that she had met to several local establishments near the UNIVERSITY OF MIAMI in Coconut Grove.   The minor Plaintiff came back to the dorm, having been provided alcohol by two of the student athletes that were with her, Alexander M. Figueroa and Jawand Blue who were 19 years old and 20 years old, respectively.

11.     When the minor JANE DOE came back to the dorm with Alexander M. Figueroa and Jawand Blue, she was obviously inebriated as seen on video and should have been seen and acted upon by the dorm personnel who had to check in the athletes.  In realty there was no check in which occurred but a short discussion occurred which there was no practice and procedure at the UNIVERSITY OF MIAMI to protect and to ascertain the condition of the minor, JANE DOE, and all three were allowed to come in to the dorm freely and without any meaningful interrogation or questioning, even though the agent of the UNIVERSITY OF MIAMI in place in the dorm knew, or should have known that they minor JANE DOE had only been at the UNIVERSITY OF MIAMI a few days.

12.     Alexander M. Figueroa and Jawand Blue took the minor Plaintiff to their room and severely sexually assaulted her and raped her numerous times without her actual or consent as she was physically helpless to resist and was unaware of what was going to happened and what in fact happened in the Pearson dorm on the campus of the UNIVERSITY OF MIAMI.

13.     When the minor Plaintiff recovered somewhat, she reported the crime to the UNIVERSITY OF MIAMI and the rapes were arrested.

14.     In the days and months following the rapes, a couple of UNIVERSITY OF MIAMI personnel spoke with the minor Plaintiff but there was no real significate counseling or treatment, or assistance giving to the minor Plaintiff crime victim.

3

CASE NO:

15.    Despite bullying by the Defendants immediately after learning that the rapes had been reported as well as being abused by other students and on social media trying to protect the two rapist student athletes.   Despite all of these, the minor JANE DOE is resolute and not allowing even in a horrendous crime to keep her from her goals of playing soccer and graduating at the UNIVERSITY OF MIAMI which she in fact has accomplished.

## NEGLIGENCE OF UNIVERSITY OF MIAMI

16.    The Plaintiff realleges each and every allegation contained in Paragraph 1 through 15 as fully set forth herein and further alleges:

17.    At all times material hereto, Defendant UNIVERSITY OF MIAMI had a heighten duty to protect minor student athletes coming to Miami and the UNIVERSITY OF MIAMI for the first time from sexual assault, sexual abuse, rape, and other crimes where the minor Plaintiff is under the custody and control of the UNIVERSITY OF MIAMI leaving in a dormitory on the campus.

18.    The UNIVERSITY OF MIAMI wrongfully breached its duty to this minor JANE DOE in the first few days that she was on the campus and in at least the following omissions or commissions:

a.    Negligently allowing minors into a dormitory where there are no protections from other student particularly other students who the UNIVERSITY OF MIAMI knows or should have known had violate tendencies;

b.    Negligently allowing minors into a dormitory where there are no protections from other student who the UNIVERSITY OF MIAMI knows or should have known had violate tendencies;

4

CASE NO:

   c.      Negligently allowing minors into a dormitory where there was no meaningful guarding from being brought back into the dorm in an impaired state by two student athletes;

   d.      Failing to have adequate security measures and policies in effect which would prevent a sexual assault and rape in a UNIVERSITY OF MIAMI dormitory on the premises of the UNIVERSITY OF MIAMI;

   e.      Failing to apply common sense and negligently exposing female or minor students to unreasonably dangerous situations, including sexual assaults and rape;

   f.      Failing to provide adequate and appropriate training to personnel checking in or otherwise observing minors coming back to the UNIVERSITY OF MIAMI dormitory, particularly when it is clear that they are in impaired state;

   g.      Failing to take any and all acts that could have prevented and avoided this sexual assault and rapes in question which amounts to gross negligence;

   h.      Failing to follow the UNIVERSITY OF MIAMI own safety rules, guidelines, and standards for universities which were in placed at the time of the subject rapes;

   i.      Failing to have the proper policies and procedures and mechanisms in place to counsel, warn, and protect the minor student athletes coming to campus of the UNIVERSITY OF MIAMI, particularly before the coaches arrived six weeks later;

   j.      Failing to have any sort of systems or chaperons or other methods to

CASE NO:

prevent under age drinking and to provide other guidelines and protections for the students who are minors arriving at the UNIVERSITY OF MIAMI;

k.   Failing to have some sort of fail safe device or warning system should a student, such as the minor JANE DOE, be attacked anywhere on the campus in the UNIVERSITY OF MIAMI but more importantly, in a dormitory owned, operated, and controlled by the UNIVERSITY OF MIAMI;

l.   Failing to have any sort of managers or security personnel roaming the halls through the dorm particularly where minor student athletes are housed during their first year at the UNIVERSITY OF MIAMI;

m.   The UNIVERSITY OF MIAMI failed to properly put in place policies and procedures to protect minor women athletes particular when the UNIVERSITY OF MIAMI knew or should have known that the problem of rape on campuses had been increasing throughout the country and should have known that the UNIVERSITY OF MIAMI would not be an exception to that disturbing trend which heightens the duty that the UNIVERSITY OF MIAMI had to JANE DOE;

n.   Violating MCAA rules regarding student athletes designed to protect student athletes before these rapes occurred; and

o.   Other acts of negligence or gross negligence that will be uncovered during discovery in this matter.

## **DAMAGES**

19.   As a direct and proximate result of the rapes by the two UNIVERSITY OF

6

CASE NO:

MIAMI student athletes and for the above omissions or commissions by the UNIVERSITY OF MIAMI, understandably, the minor Plaintiff has sustained personal injury, pain and suffering, severe mental anguish, severe emotional distress, and diminishment of her capacity for the enjoyment of life.   These injuries are continuing and permanent in nature.   Furthermore, the minor Plaintiff will in the future incur future expenses for treatment by psychologist, psychiatrist, or mental health counselors.

WHEREFORE, Plaintiff JANE DOE demands judgment for damages against Defendant UNIVERSITY OF MIAMI and trial by jury of all issues triable as of right by jury.

DATED this 22<u>nd</u> day of June, 2018.

Respectfully submitted,

THE LAW FIRM OF STUART H. SHARE, P.A.
*Attorneys for Plaintiff*
777 Brickell Avenue, Suite 400
Miami, Florida 33131
Telephone: (305) 371-8700
Email: Stuart@sharelawpa.com
carla@sharelawpa.com

By: s/STUART SHARE
STUART SHARE
Florida Bar No. 511579

and

EVERSOLE & ASSOCIATES, P.A.
*Attorneys for Plaintiff*
777 Brickell Avenue, Suite 400
Miami, Florida 33131
Telephone: (305) 403-5700
Email: jfelaw@jeversole.com

By: s/JOHN F. EVERSOLE III
JOHN F. EVERSOLE III
Florida Bar No. 371513

Filing # 75551199 E-Filed 07/26/2018 12:36:39 PM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**JANE DOE,**                                        **GENERAL JURISDICTION DIVISION**

       **Plaintiff,**                             **CASE NO. 2018-021364 CA (22)**

**vs.**

**UNIVERSITY OF MIAMI, a Florida**
**not for profit corporation,**

       **Defendant.**

_____/

### DEFENDANT'S MOTION TO DISMISS COMPLAINT

Pursuant to Fla. R. Civ. P. 1.140(b), Defendant, University of Miami (the "University"), hereby moves to dismiss the Complaint filed by Plaintiff, Jane Doe ("Doe"), for failure to state a cause of action.

### I.    Allegations of Doe's Complaint

Doe alleges that she arrived at the University as a minor[1] student athlete and was housed in the Pearson Dormitory. (Compl. ¶ 5). Doe further alleges that, on July 5, 2014, shortly after arriving at the University, she went out to local establishments in Coconut Grove with new friends and was provided alcohol by two male student athletes, ages 19 and 20. (Compl. ¶ 10). Doe alleges that she was inebriated when she returned to the dormitory and that the two male athletes took her to their room and sexually assaulted her. (Compl. ¶¶ 11, 12).

Doe has asserted a single claim against the University for negligence. She asserts that the University "had a heighten [sic] duty to protect minor student athletes coming to Miami and the

---

[1]    At the time of the incident in question, Doe was approximately two weeks shy of her eighteenth birthday.

1

University of Miami for the first time from sexual assault, sexual abuse, rape, and other crimes where the minor Plaintiff is under the custody and control of the University of Miami leaving [sic] in a dormitory on the campus." (Compl. ¶ 17). Doe further vaguely asserts that the University breached its duty in a myriad of ways, including by (1) "[n]egligently allowing minors into a dormitory where there are no protections from other student [sic] particularly other students who the University knows or should have known had violate [sic] tendencies;" (2) failing to have adequate security measures and policies in effect which would prevent a sexual assault and rape in a University dormitory on campus; (3) failing to provide adequate training to personnel checking in or observing minors coming back to their dorm, particularly in an inebriated condition; (4) failing to follow the University's own (albeit undefined) safety rules, guidelines and standards; (5) failing to have systems or chaperons to prevent underage drinking; (6) failing to have security personnel roaming the dorm halls; and (7) violating undefined "MCAA [sic] rules regarding student athletes designed to protect" them. (Compl. ¶ 18).

## II.   Florida Law Governing the Pleading of Negligence Claims

"[T]he tort of negligence requires the establishment of duty, breach, proximate cause, and damages." *Sewell v. Racetrac Petroleum, Inc.*, ___ So. 3d ___, 2017 WL 6598586, at *2 (Fla. 3d DCA Dec. 27, 2017). In *Sewell*, the Third District affirmed dismissal of a negligence claim on the ground that the defendant owed no legal duty as alleged. Duty is the threshold issue in a negligence case and "it is for the court to determine the existence of a duty." *Id.*  Duty "exists as a matter of law and is not a factual question for the jury to decide." *Id.* (quoting *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)). Moreover, a claim premised on negligence that merely alleges, in conclusory fashion, that the defendant engaged in conduct that constituted a negligent breach of a duty owed to the plaintiff, is patently insufficient and warrants dismissal. *Raymond,*

*James & Associates, Inc. v. Zumstorchen Investment, Ltd.*, 488 So. 2d 843, 845 (Fla. 2d DCA 1986). Here, Doe's allegations of duty are conclusory and are not supported by applicable law.

### III. The University Owed no Heightened Duty to Plaintiff

Although Doe alleges that the University owed her some undefined heightened duty of care, her complaint contains no allegations to support such a conclusory statement.

### A. There Existed no Fiduciary Duty on the Part of the University

Courts throughout the country have consistently held that a university owes no fiduciary duty to its students based upon their status as students. *See, e.g., Knelman v. Middlebury Coll.*, No. 5:11-cv-123, 2012 WL 4481470 (D. Vt. Sept. 28, 2012) (Vermont "has never recognized a fiduciary relationship between a student and a school or school official" and such fiduciary relationships generally do not exist in the school context); *Tunne v. Hendrick*, No. 5:10CV-00181, 2012 WL 3644852 (W.D. Ky. Aug. 24, 2012) (under Kentucky law a student-teacher relationship does not generally give rise to a fiduciary duty); *Valente v. Univ. of Dayton,* 438 Fed. Appx. 381, 387 (6th Cir. 2011) (under Ohio law, no fiduciary relationship exists between a university and its students); *Bass ex rel Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010) (finding no fiduciary relationship between a student and a private high school and noting that the court's research "has not revealed a single case in any state or federal court within the Second Circuit holding or even suggesting that a secondary school — public or private, boarding or day-session — or its employees owe a fiduciary duty to its students"); *Vurimindi v. Fuqua Sch. Of Bus.,* No. 10-234, 2010 WL 3419568, at *7 (E.D. Pa. Aug. 25, 2010) ("university personnel do not owe a fiduciary duty to students under Pennsylvania law"); *Lary v. Wesleyan Univ.,* No. CV055003943, 2009 WL 865679, at *12 (Conn. Super Ct. Mar. 10, 2009) (declining to find a fiduciary relationship between a university and its students); *Manning v. Temple Univ.,* No. 03-4012, 2004

WL 3019230, at *10 (E.D. Pa. Dec. 30, 2004), *aff'd,* 157 Fed. Appx. 509 (3d Cir. 2005) ("the parties have not called to our attention any Pennsylvania case which has ruled that a graduate school or its professors owe any fiduciary duties to graduate students"); *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715–16 (S.C. 2003) (finding no fiduciary relationship between a university student and university advisor under South Carolina law); *Shapiro v. Butterfield*, 921 S.W.2d 649, 651 (Mo. Ct. App. 1996) (finding a graduate student failed to allege a fiduciary relationship, because she cited no cases finding a fiduciary relationship between a student and faculty advisor and the petition contained only bare allegations). The student-educational institution relationship usually is not considered a fiduciary relationship because school administrators have "divided loyalties," as they serve the interests of both the student in question and other students and the institution, "unlike other fiduciary relationships in which the fiduciary must act primarily for the benefit of another." *Ryan v. Univ. of N.C. Hospitals.* 609 S.E.2d 498, at *4 (N.C. Ct. App. 2005) (unpublished table opinion). *See also McFayden v. Duke Univ.*, 786 F.Supp.2d 887, 986 (M.D.N.C. 2011) ("the student-administrator relationship is not generally a fiduciary relationship").

In short, as those courts to have considered the issue have held, "a typical student-university relationship does not, *without more,* establish a fiduciary relationship between student and university." *Childers v. N.Y. and Presbyterian Hosp.,* 36 F.Supp.3d 292, 306 (S.D.N.Y. 2014) (emphasis in original). Florida law is in accord. *See, e.g., Morrison v. University of Miami*, No. 1:15-cv-23856-UU, 2016 WL 3129490, at 7 (S.D. Fla. Jan. 20, 2016) (collecting cases and stating that "[t]he greater weight of authority appears to support the University's position that a fiduciary

4

duty does not simply arise because of students' status, and this Court agrees").[2]

### B.  There was no Special Relationship Between the University and Doe

In her complaint, Doe asserts that she was under the "custody and control" of the University and that, as a result, the University had a duty to protect her. That is not the case. As the Third Circuit explained in *Bradshaw v. Rawlings*, 612 F. 2d 135, 138-140 (3d Cir. 1979), *cert denied*, 446 U.S. 909 (1980), a negligence case that involved a college student's underage drinking:

> Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. [T]he authoritarian role of today's college administrations has been notably diluted in recent decades. ... There was a time when college administrators and faculties assumed a role *in loco parentis*. Students were committed to their charge because the students were considered minors. A special relationship was created between college and student that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college. ... [F]or purposes of examining fundamental relationships that underlie tort liability, the competing interest of the student and of the institution of higher learning are much different today than they were in the past.

"[T]he view that these institutions stand *in loco parentis* – in place of the parent – with respect to the student ... is now disfavored because it no longer represents contemporary values." *Sharick v. Southeastern University of the Health Sciences, Inc.*, 780 So. 2d 142, 142 (Fla. 3d DCA 2001) (Ramirez, J. concurring).

No special relationship even arguably was created by virtue of the fact that Doe was a student athlete as Doe appears to allege. That is because the injury she allegedly sustained (sexual

---

[2]      In *Morris v. Brandeis Univ.*, No. CA002161, 2001 WL 1470357, at *6 (Mass. Super. Ct. Sept. 4, 2001), the court clarified that the relationship between students and universities is contractual rather than fiduciary. So, too, Florida law recognizes that the relationship between a student and a private university is contractual in nature. *Sirpal v. Univ. of Miami*, 309 Fed. Appx. 924, 292 (11th Cir. 2013). *See also Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F.Supp.2d 1256, 1268 (S.D. Fla. 2004) ("Under Florida law, a student and a private university have a contractual relationship.").

assault/rape) did not occur while she was participating in a scheduled athletic practice or event. Rather, the alleged assault occurred while she was acting in her capacity as a private student. For example, in *Kleinknecht v. Gettysburgh College,* 989 F. 2d 1360 (3d Cir. 1993), parents of a lacrosse player who suffered a fatal heart attack during intercollegiate lacrosse practice brought suit against the college for negligence in connection with its medical preparedness for and response to this incident. The court held that a duty existed on the part of the college. The court reasoned that the student had been recruited to play lacrosse at the college and, at the time he was stricken, he was not engaged in his own private affairs at Gettysburgh College. Rather, he was participating in a scheduled athletic practice for an intercollegiate team sponsored by the college under the supervision of college employees. On those facts, the court reasoned, a special relationship existed between the college and the student that was sufficient to impose a duty to provide prompt and adequate emergency medical services on the college. *Kleinknecht*, 989 F. 2d at 1367.

Unlike in *Kleinknecht*, this is not a case where Doe was injured while participating in a soccer practice or event at the University sponsored by the University under the supervision of University employees. Rather, Doe allegedly was sexually assaulted in the dormitory room of her assailants after engaging in underage drinking in Coconut Grove in one or more establishments neither owned nor controlled by the University. Doe does not allege that the University was involved in serving, supplying or purchasing the alcohol that rendered her impaired and, under such circumstances, there exists no duty based on a custodial relationship between the University and its students. *Kleinknecht*, 989 F. 2d at 1368. Moreover, even where a university promulgates social policies designed to prevent underage drinking, and even if the university understands that underage drinking is common on college campuses, universities do not have a duty to protect underage students from drinking alcoholic beverages. *Hooker v. Lehigh University*, 800 F. Supp.

234 (E.D. Pa. 1992). Finding such a duty would be tantamount to finding a university to be liable *in loco parentis*, despite the fact that there exists no such legal basis for imposing liability on a college. *Id.* at 240-41.

"Colleges and universities are educational institutions, not custodial." *Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999) (dismissing case against college officials due to death of a student who fell to his death during a freshman party on the grounds that no special relationship existed between freshman and college officials sufficient to protect the freshman). "[S]tatus as an out-of-state freshman is insufficient to create a 'special relationship' or an affirmative duty between plaintiffs and defendants." *See also Freeman v. Busch*, 349 F. 3d 582, 587-88 (8th Cir. 2003) ("since the late 1970s, the general rule is that no special relationship between a college and its own students because a college is not an insurer of the safety of its students"). Moreover, the fact that Doe was just shy of turning eighteen years of age when the sexual assault allegedly occurred does not change the analysis and somehow transform the University's relationship with Doe into a custodial one. In *Hartman v. Bethany College*, 778 F. Supp. 286 (N.D. W.Va. 1991), a seventeen-year-old female freshman was injured on campus after illegally consuming alcohol at on-campus parties. The plaintiff argued that the doctrine of *in loco parentis* applied to her relationship with the college and that the college breached the heightened duties it owed to her under this doctrine. The court flatly rejected that premise, stating:

> College students today are no longer minors; they are now regarded as adults in almost every phase of community life. ... It is not reasonable to conclude today that seventeen year old college students necessarily require parental protection and supervision. If they did, society might place many more limitations upon the ability of a minor to attend college than currently exist. A college freshman is just that; whatever his or her age. A college does not stand *in loco parentis* to its seventeen year old college freshmen.

778 F. Supp. At 294 (internal quotations and citation omitted).

7

In short, Doe's complaint is devoid of any allegation sufficient to deviate from the well-established general rule that there exists no special relationship between a university and its students and, thus, no heightened duty on the part of the university to protect. Having failed to allege any facts to support the notion that there existed between Doe and the University any kind of a special or fiduciary relationship that would give rise to a heightened duty on the part of the University, the Court should look to whether a duty existed on the part of the University to prevent Doe from consuming alcohol and to prevent her from being sexually assaulted.

### IV.   The University had no Duty to Protect Doe Merely Because she was Living in a University Dormitory

Doe appears in her complaint to contend that the University somehow was negligent in failing to protect her from sexual assault simply by virtue of the fact that she was living in a University dormitory. Her conclusory allegations, however, fail to state a cause of action.

It is well-established that "[t]he touchstone for determining whether a duty exists is 'foreseeability.'" *Sewell,* 2017 Wl 6598586, at *2. In *Cutler v. Board of Regents of the State of Florida,* 459 So. 2d 413 (Fla. 1st DCA 1984), a female freshman student at FAMU, who was assaulted and raped in her on-campus dormitory room, brought an action alleging, *inter alia,* (1) that FAMU had represented that the dormitory was reasonably safe and secure for the safety of female students, (2) that university officials were aware or should have been aware of the existence of numerous other assaults, attacks and rapes on female members of the university community and (3) that assailants gained access to her room through the common areas of the dormitory and assaulted her. The appellate court agreed that the allegations of the complaint were insufficient to state a cause of action, explaining that, "[a]lthough Florida recognizes no duty on the landlord's part to protect his tenants against criminal conduct of third parties merely by reason of the landlord-tenant relationship, recent Florida decisions have held that a landlord, who recognizes and assumes

8

the duty to protect his tenants from foreseeable criminal conduct, may be liable if he fails to take

reasonable precautions to prevent injury to his tenants from this conduct." 459 So. 2d at 414-15.

The appellate court found, however, that the plaintiff student had failed sufficiently to allege the

requisite element of duty on the part of the university:

> Although appellant attempts to allege foreseeability, the bare allegations of her
> complaint are conclusory in nature, without supporting facts. She alleges that
> university officials were aware, or should have been aware, of the existence of other
> assaults and rapes on female members of the university community; but she has
> failed to allege where or when these assaults and rapes occurred, or any other
> circumstances indicating the basis upon which to presume such knowledge on the
> part of [Board of Regents]. Did they occur on or nearby the FAMU campus or in
> the next town? Did they occur at some remote time in the past, or within reasonably
> close proximity in time to the attack against appellant? … Moreover, the complaint
> fails to allege that FAMU either expressly or impliedly assumed a duty to provide
> adequate security measures at Wheatley Hall. No facts are alleged concerning
> security measures in force at the time the landlord-tenant relationship between the
> parties began or whether such security measures, if they existed, were in force when
> the rape occurred. Although appellant does allege that FAMU represented to her
> that the university was reasonably safe and secure for the safety of female students,
> we are unable to infer from this allegation facts sufficient to support a cause of
> action for breach of an assumed duty to protect student tenants from foreseeable
> criminal conduct.

459 So. 2d at 415.

Doe's complaint suffers from all of the same infirmities as in the *Cutler* case and, thus,

dismissal is required. Doe's complaint is replete with conclusory allegations of a heightened duty

on the part of the University that are contrary to law and are insufficient as a matter of law to

support a finding of any duty on the part of the University to protect Doe from underage drinking

and from the sexual assault that allegedly occurred. The complaint is devoid of any allegations to

support the notion that the alleged sexual assault on Doe was foreseeable. *See, e.g., Shivers v.
University of Cincinnati,* No. 06AP-209, 2006 WL 3008478 (Ct. App. Oh. 2006) (evidence of

criminal activities on a university campus did not support a finding that the rape of a student in a

dormitory bathroom was foreseeable and, thus, the university did not have a duty to protect the

student as required for the university to be held liable for negligence, where other rape incidents were temporally and spatially distanced from the dormitory rape). Doe's complaint is devoid of any allegations of the University's alleged failure to meet its alleged duty to protect Doe. *See Doe v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Tex. 2017) ("while Does 1, 3 and 5 allege they were sexually assaulted on Baylor's campus, they have not alleged that Baylor failed to meet its duty to provide them with safe housing, thereby causing their assaults, nor have they provided any other exception to the general rule that a university has no duty to protect its students").

In short, this is not a case where Doe alleges that she was the victim of a crime because the University, her landlord, failed to install locks on her door or otherwise failed to take basic necessary safety measures. Because Doe's complaint fails to state a cause of action against the University for negligence, the complaint should be dismissed.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel. (305) 373-3232
Fax (305) 373-3233

By:   s/ Teresa Ragatz
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Christopher M. Yannuzzi
Florida Bar No.: 92166
Yannuzzi@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically

via the Florida Court's e-Filing Portal this 26th day of July, 2018, upon the following:

The Law Firm of Stuart H. Share, P.A.
Stuart Share, Esq.
777 Brickell Avenue, Suite 400
Miami, Florida 33131
Stuart@sharelawpa.com

Eversole & Associates, P.A.
John F. Eversole III, Esq.
777 Brickell Avenue, Suite 400
Miami, Florida 33131
jfelaw@jeversole.com

By: ___s/ Teresa Ragatz_____
　　　Teresa Ragatz

Filing # 76700099 E-Filed 08/20/2018 03:23:51 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

JANE DOE,

      Plaintiff,

vs.

CASE NO: 2018-021364 CA 22

UNIVERSITY OF MIAMI, a Florida
not for Profit Corporation,

      Defendant.

_____/

## NOTICE OF CHARGING AND RETAINING LIENS

      TO ALL PARTIES, ATTORNEYS AND ALL OTHERS WHO MAY BE CONCERNED:

THE LAW FIRM OF STUART H. SHARE, P.A. and THE LAW OFFICES OF DEAN M.

GETTIS, P.A. hereby asserts a charging lien on all proceeds and benefits in whatever form

recovered by, or on behalf of, Plaintiff by settlement, judgment or otherwise and a retaining lien

on all files, papers and things in its possession related to this representation and case to secure

payment of its outstanding attorney's fees and costs.

CASE NO: 2018-021364 CA 22

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of forgoing was furnished by E-mail Only Pursuant to Rule 2.516 on this <u>20th</u> day of August, 2018 to: Eric D. Isicoff, Esq., Isicoff Ragatz, <u>Isicoff@irlaw.com</u>, <u>Ragatz@irlaw.com</u>, <u>Yannuzzi@irlaw.com</u>; Rubenstein Law, P.A., <u>eservice@rubensteinlaw.com</u>, Eversole & Associates, P.A., John Eversole III, Esq. <u>jfelaw@jeversole.com</u>.

Respectfully submitted,

THE LAW FIRM OF STUART H. SHARE, P.A.
777 Brickell Avenue, Suite 400
Miami, Florida 33131
Telephone: (305) 371-8700
Email: stuart@sharelawpa.com
<u>carla@sharelawpa.com</u>

By: <u>s/STUART SHARE</u>
STUART SHARE
Florida Bar No. 511579